Hill *vs.* Harris.

JOHN M. HILL, plaintiff in error, *vs.* CALEB J. HARRIS *et al.*, defendants in error.

An injunction to restrain the collection of a judgment at law, on the ground that there is a good defense to the claim on which the judgment is founded, but that the complainant did not know of said defense until it was too late to avail himself of it before the judgment was obtained, ought not to be granted unless it clearly appears that the failure to acquire the knowledge of it before the trial at law was wholly unmixed with negligence on the part of complainant, or want of attention to the means of information which were within his reach for several years before the judgment. More especially should this be so when, on the day the action at law was instituted, he had notice of facts connected with the matter of the alleged defense that should put a man of ordinary prudence and discretion on inquiry.

Injunction. Judgment. Before Judge HOPKINS. Coweta county. At Chambers. January 26th, 1874.

In 1859, Burwell P. Hill bought of William Mitchell, of Meriwether county, land, and gave Mitchell as many as five notes therefor, with John M. Hill and one Dennis as his securities. These notes fell due by installments in 1860, 1861 and 1862, and were for different amounts, and aggregated about $15,000 00. Some of them were paid and destroyed. One of them was for $5,450 00, due 25th December, 1860. William Mitchell died and John Mitchell became his administrator. On said note John M. Hill paid said administrator $2,500 00, 9th of February, 1863, and somebody paid him $3,080 00 on the 13th of the following March. Boyd, as receiver of Mitchell's estate, sued on this note, and both Hills acknowledged service on the 31st of December, 1869. On the same day the Hills acknowledged service upon another suit by Harris, as guardian, upon a note for $3,438 37, dated the 25th February, 1867, and due 25th December, 1867. No defense was filed, and judgment was rendered thereon on the 6th of September, 1870. *Fi. fa.* was issued on the 24th of September, 1870, and levy on Burwell P. Hill's land was made the 5th of January, 1871. On the day of this levy both Hills sought to enjoin said Harris' *fi. fa.* On the 15th

January, 1871, Judge Hopkins refused said injunction. In March, 1871, the supreme court affirmed that judgment. On the 1st of May, 1871, Burwell P. Hill filed an affidavit of illegality. On the 14th of February, 1873, said *fi. fa.* was levied upon John M. Hill's land. This levy was stayed by relief affidavit by both Hills. This affidavit was dismissed on demurrer, 5th September, 1873. In December, 1873, John M. Hill again sought to enjoin. The injunction was refused 18th January, 1874, and presents the case here for review.

The first bill averred that Harris ought not to collect full amount of his debt, because as follows: He and Dennis, B. P. Hill's agent, fraudulently got Mitchell's administrator to take $3,080 00 of Confederate money, which he got from Harris, and credited it on said note of $5,450 00, and then, or afterwards, Dennis and John M. Hill gave Harris a new note for $........., dated the ........ March, 1863, on account of said payment. Dennis signed B. P. Hill's name to said note. Afterwards, on the 23d of February, 1867, the Hills gave Harris, in lieu of said note, their note for $3,438 51, due 25th December, 1867, and a mortgage on B. P. Hill's land. This they did because Harris represented that he had purchased of Mitchell's administrator the amount of $3,080 00 of the said land note, and took the administrator's place, and that the note given by Dennis and John M. Hill was simply in lieu of their indebtedness to Mitchell for that amount. Dennis, in the meantime, died. They did not defend the suit because they believed said representations of Harris, and were advised that they could not scale the note. They discovered these facts during September term, 1870, of the court, but court adjourned before they could examine all the records and see the witnesses whom they believed could throw light upon the subject. The affidavit of illegality averred that Harris loaned B. P. Hill, by his agent, on the 13th of March, 1863, $3,080 00, for which they gave their note, and they gave the note of 25th February, 1867, in renewal thereof. To get this renewal Harris said that he bought a land note which Mitchell held on the Hills, when he had only loaned $3,080 00.

The last bill says there were as many as five notes; that Dennis told B., P. when both Hills were at home, that Harris had taken up a land note, and that the balance due thereon with interest to 25th December, 1863, was $3,248 87, and Harris desired to renew it and give time, and B. P. and J. M., and Dennis made this new note dated back to 22d March, 1863, supposed date of purchase. In 1867, Harris and Dennis repeated said representations and thus got the note sued on, for the one last mentioned, leaving Dennis off. Afterwards, Harris sued. John M. offered him $2,000 00 cash when service was acknowledged, but Harris declined, saying, the debt was for land. Counsel advised the note could not be scaled under the said facts, and no defense was filed. Meanwhile all the notes were taken up, as supposed, except one, which Mitchell's estate held and sued. After judgment, and too late to move for new trial, Mr. Adams presented one of the notes. Then first they discovered the mistake or error, and suspected Harris. Harris asserted he had bought land note, and made contradictory statements, saying he could not explain. When the former bill was drawn they did not know all the facts, and they hastened to prevent the sale. Harris denied the fraud charged.

Burwell P. Hill, in his affidavit, swears that on 22d March, 1863, he gave the note $3,248 87, because Dennis said Harris had taken up his land note, and the renewal, in 1867, was given solely upon the idea aforesaid; that after *judgment* the $5,450 note was presented, and then, for the first time, deponent discovered Harris' deceit.

The answer denied all fraud and concealment. It declared that John M. Hill was advised before Mitchell was seen, that Dennis and Harris were going to Mitchell's to invest Harris' Confederate money in their note, and approved thereof, and said good notes were worth a premium. Harris does not remember the exact *manner* of making the investment. He thinks he bought and took up one of their notes. At any rate, he paid Mitchell something over $3,000 00 of Confederate money which he held for his wards, collected on debts, and without

an avowal that it was his money, and without any statement of the falsehood charged.

Pursuant to the arrangement which he trusted Dennis, Hill's agent, to complete, Dennis did bring him the note of B. P. Hill with Dennis and John M. Hill, as security for $3,-248 87. He, Harris, was not present, and had nothing to do with getting this note. The gist of the arrangement was that for each dollar of Mitchell's claim canceled by him, he should have the note of the debtors and give longer time, and this was fully understood by Dennis and Hill. He does not know what Dennis told them, but Dennis was honest. Was himself to give the note, and doubtless told the truth. Harris never said anything to the Hills about it, except after Dennis, who was perfectly good and solvent, offered his own note for $2,500 00 for the said note, and defendant declined. There was a negotiation to release Dennis by giving the Hills further time upon a mortgage security, and all that there was said touching the Mitchell trade was with a view of learning whether the note should be scaled, and the note was scaled about $900 00, and thus renewed in February, 1867.

The answer set out the former bill and relief affidavit as estoppel, and also to contradict complainant's present bill, and to show that the Hills had suffered no wrong, and if the Mitchells were injured, John Mitchell, long since discharged from his executorship, could not transfer the claim to Hill. It denied the tender. Person's affidavit showed that Harris, and not Dennis, for D. P. Hill, paid Mitchell the money.

W. F. WRIGHT; B. H. HILL & SON, for plaintiff in error.

A. W. HAMMOND & SON, for defendants.

1st. As to parties, see Hill vs. Harris, 42 Ga. R., 412. Harris solvent, discretion of Judge: 43 Ga. R., 176, 631; 42 Ibid., 386.

2d. The matter is res adjudicata: See Field vs. Sisson et al., 40 Ga. R., 67; Gillion vs. Massey, 41 Ibid., 221; Black vs. Black & Hunter, 27 Ibid., 46–7; Hill vs. Harris, 42 Ibid., 412.

3d. The record shows such negligence as bars the plaintiff: See Hill *vs.* Harris, 42 Ga. R., 412; Code, secs. 3126, 3129, and cases cited; Bostwick *vs.* Perkins *et al.*, 1 Kelly, 137, 139. Ignorance and diligence must concur: Taylor *vs.* Sutton, 15 Ga. R., 107; Avery *vs.* United States, 12 Wallace U. S. R., 304. What diligence required: See Tindal *vs.* Harkenson, 19 Ga. R., 450; Castleberry *vs.* Scandrett, 20 *Ibid.*, 246; Collier *vs.* Harkness, 20 *Ibid.*, 362.

TRIPPE, Judge.

To reverse the judgment in this case and direct the injunction to be granted would be to allow a party to be relieved from his own *laches*, under circumstances which would be in direct conflict with all rules requiring diligence. It was, at any time for several years, within the power of the complainant to ascertain all the facts on which he now rests the equity he claims; and this before the suit was instituted on which the judgment was obtained which is now complained against. It is also true that the very suit on which that judgment was rendered contained notice of the facts which are at this late day attempted to be set up as furnishing grounds for setting the judgment aside and granting a new trial. If complainant had been before that time misled or deceived by defendant in error, the plaintiff in the judgment, it was his own inexcusable negligence that he did not awake to the fact that he had been so misled. On the same day he was sued in the action in which the judgment was rendered, he was also sued on one of the other notes, and the two declarations contained all that was necessary to put any man of ordinary prudence on inquiry as to all the matters of the alleged defense. *Vigilantibus non dormientibus lex subvenit.* For a decision in this same case, which really almost determines this—certainly it does as to the great principle controlling it—see *Hill vs. Harris*, 42 *Georgia*, 412.

Judgment affirmed.